COMMONWEALTH *vs.* STEPHEN F. LITTLETON.

Suffolk.    May 23, 1927. — June 30, 1927.

Present: RUGG, C.J., CROSBY, CARROLL, WAIT, & SANDERSON, JJ.

*Referendum*, Signatures to petition, What constitutes petition, Suppression of petition. *Constitutional Law*, Referendum.

The requirement in Part II of the General Provisions of art. 48 of the Amendments to the Constitution of the Commonwealth, "Not more than one-fourth of the certified signatures on any petition shall be those of registered voters of any one county," does not apply to the request for a referendum signed by ten qualified voters which is first filed, but to the petition when completed by the filing of the required number of subsequent signers.

Each paper, issued for subsequent signers after the filing under the provisions of art. 48 of the Amendments to the Constitution of the Commonwealth of the original request for a referendum, and containing at the top the names of the first ten signers, a description of the proposed law, a request for a referendum of the designated act and a request that its operation be suspended, becomes, when signed, "a petition for the submission of a question to the voters" within the meaning of St. 1923, c. 183, the wilful suppression of which is a criminal offence.

At the trial of an indictment under St. 1923, c. 183, for wilful suppression of a petition for the submission of a question to the voters of the Commonwealth, there was evidence that the defendant, an attorney at law, was employed to circulate a paper for the procuring of signatures to such a petition following the filing of the original petition; that about two months thereafter he reported that 12,660 certified signatures on official blanks had been obtained by him; that when asked for these signatures he stated that he would take them to his clerk and have her tabulate them by counties; that he was also given official blanks with 1,900 additional signatures, some of which were not certified, and that he promised to take them to the city hall, Boston, to be certified; and that, thereafter, when asked by his employers to deliver these signed papers, he made excuses for not delivering which were not true. *Held,* that a verdict of guilty was warranted.

INDICTMENT, found and returned on April 14, 1926, charging that the defendant on July 24, 1925, "did wilfully suppress a petition for the submission of a question to the voters of said Commonwealth."

The indictment was tried in the Superior Court before *Gray*, J. Material evidence is stated in the opinion. A motion by the defendant that a verdict of not guilty be ordered was denied. The defendant was found guilty and alleged exceptions.

*S. F. Littleton, pro se*, submitted a brief.

*D. J. Lyne*, Assistant District Attorney, for the Commonwealth.

SANDERSON, J. The defendant, an attorney at law, was indicted for wilfully suppressing a petition for the submission of a question to the voters of the Commonwealth. The offence is described in the words of St. 1923, c. 183.

It appeared in evidence that on May 4, 1925, a petition in the manner and form provided by the Constitution was filed with the Secretary of the Commonwealth asking for a referendum on St. 1925, c. 280, which had been approved April 29, 1925. This petition bore ten names, all of which had been certified as names of qualified voters of the city of Boston. On May 18, 1925, the defendant was engaged to secure names of subsequent signers to the petition, and undertook the task. His employers relied upon him for advice in all matters relating to the referendum. The jury could have found that about two months thereafter he reported that 12,660 certified signatures on official blanks had been obtained by him; that when asked for these signatures he stated that he would take them to his clerk and have her tabulate them by counties; that he was also given official blanks with 1,900 additional signatures, some of which were not certified, and that he promised to take them to the city hall, Boston, to be certified. Thereafter, when asked by his employers to deliver these signed papers, he made excuses for not delivering which were not true. At a later time he gave as the reason for not turning them over that he had not been paid all that was due for his work, and he now so contends. There was evidence that he had been paid in full

and had been offered an additional sum if he would turn the signatures over in time for them to be filed. He never filed any of these signatures with the Secretary of the Commonwealth and did not deliver them to his employers. The only exception is that based upon the refusal of the trial judge to allow a motion for a directed verdict. It does not appear that the evidence is all reported.

The defendant contends that he was justified in not delivering the signatures upon the grounds (1) that they were not certified and the time for certification had passed when demand was made; (2) that he had not been paid the balance due him for fees; and (3) that the petition for referendum was of no legal effect because the ten signers thereto were voters in one county.

The complete answer to the defendant's contentions (1) and (2) is, that the jury could have found that neither of them is true.

A petition for referendum under the provisions of art. 48 of the Amendments to the Constitution is a petition for the submission of a question to the voters within the meaning of St. 1923, c. 183, and the wilful suppression of such a petition is a criminal offence. This offence is properly charged. *Commonwealth* v. *Connelly,* 163 Mass. 539, 541.

Part II of the General Provisions of this amendment provides that "Not more than one-fourth of the certified signatures on any petition shall be those of registered voters of any one county." It is contended that the original request for a referendum signed by ten qualified voters is the petition to which the last quoted provision of the amendment applies, and that the signatures required to complete it are only auxiliary to that petition. In our opinion the quoted provision of the amendment was not intended to apply to the petition first filed, but to the petition when completed by the filing of the required number of subsequent signers. Its purpose is to make certain that the petition has substantial support throughout the Commonwealth before submitting the question to popular vote. This purpose would fail if the provision should be construed to be limited to the part of the petition first filed.

By the terms of art. 45 of the Amendment to the Constitution under consideration (Part I), the people reserved to themselves "the power of a specified number of voters to submit laws, enacted by the general court, to the people for their ratification or rejection." Under the General Provisions of this amendment (Part I) it was provided that the General Court "may require individuals who circulate petitions for hire or reward to be licensed, and may make other reasonable regulations to prevent abuses arising from the circulation of petitions for hire or reward." One of the objects of the enactment of St. 1923, c. 183, was to prevent such abuses, and to make it more certain that the desire of the people for a popular vote as expressed by the signatures to any of the petitions should not be thwarted by a suppression of their petitions.

The request first filed is a petition, though incomplete. Each blank furnished for subsequent signers contains at the top the names of the first ten signers, a description of the proposed law, a request for a referendum of the designated act and a request that its operation be suspended. Each of these papers when signed becomes "a petition for the submission of a question to the voters" within the meaning of the statute upon which the indictment was founded.

In *Brooks* v. *Secretary of the Commonwealth,* 257 Mass. 91, the court said in referring to the initiative petition first signed by ten qualified voters and the petitions containing the additional signatures, "Both petitions are in the end part of the same petition, the only distinction being the different times at which the signatures may be procured."

Upon the evidence, the jury could have found that the defendant wilfully suppressed a petition for the submission of a question to the voters of the Commonwealth. His motion for a directed verdict was properly denied.

*Exceptions overruled.*